BARZILLAI HOWARD *versus* JOHN GROVER.

| 28 | 97 |
| 93 | 148 |

A new trial will not be granted, merely because the party has newly discovered the evidence, to prove a certain fact, unknown to him at the trial, if by the use of ordinary diligence he could have ascertained the fact before the trial.

A surgeon is not liable for a want of the highest degree of skill in the performance of an operation in the line of his duty; but only for the want of ordinary skill, and for the want of ordinary care and ordinary judgment.

THIS was an action of the case, against the defendant for alleged malpractice as a surgeon, and was tried upon the plea of the general issue, WHITMAN C. J. presiding, at the November term, of this Court, 1847.  The jury returned a verdict in favor of the plaintiff, and assessed the damages at $2025.

The defendant moved for a new trial, because the damages were excessive, and because the verdict was against the evidence.

The defendant afterwards filed another motion to have the verdict set aside, because he had, since the verdict was rendered, discovered new and important evidence, the existence of which was unknown to him at the time of the trial, to wit, that the *periosteum* would reproduce itself.

The testimony given at the trial, was all reported, and certified to be a true report, by the presiding Judge. Affidavits to prove the facts alleged in the second motion were produced.

These motions were argued by

*Codman,* for the defendant ; — and by

*Howard & Shepley,* for the plaintiff.

The counsel for the defendant, cited Rev. Stat. c. 123, § 1 ; 17 Pick. 471 ; 12 Johns. R. 234 ; 3 Pick. 385 ; 4 T. R. 687 ; 5 Taunt. 280.

For the plaintiff, were cited the following. 17 Maine R. 247 ; Cowp. 230 ; 2 Wils. 244 ; 4 T. R. 687, cited for defendant ; 3 Pick. 113 and 379 ; 7 Pick. 85 ; 9 Johns. 45 ; 9 Wend. 470 ; 16 Maine R. 187 ; 22 Maine R. 252.

The opinion of the Court, SHEPLEY J. concurring only in the result, was drawn up by

WELLS J. — This case was tried at the November term, 1847, and a verdict was rendered for the plaintiff for $2025. The defendant was charged with malpractice, as a surgeon. And he moves for a new trial because of the discovery of new evidence, and of excessive damages.

The gentlemen by whose testimony, the alleged newly discovered facts can be shown, all resided in Portland, where the trial was had. No measures were taken to procure their attendance. By the use of ordinary diligence, the defendant could have ascertained the facts, to which they are able to testify. If his knowledge of surgery was less extensive than theirs, by

inquiry of them, the information, which they possessed, could have been obtained. If any witness had stated that the *periosteum* had not the power of reproduction, although no such evidence appears in the abstract, furnished to us, information on this subject could have been presented by consulting works on surgery, or the gentleman by whom it now appears, such an error could be corrected.

Parties are expected to exercise due diligence, in preparing their causes and in producing testimony, and the omission to do so, does not lay the foundation for a new trial.

There is nothing in this part of the case, which would authorize us in disturbing the verdict.

Are the damages excessive, to such a degree, as to require the interference of the Court ?

It is always a delicate undertaking, to set aside a verdict on account of excess of damages, especially in cases, where the rules by which they are to be measured, are vague and uncertain. The power to do it, is recognized in many cases, to some of which we refer. *Chambers* v. *Caulfield*, 6 East, 245 ; *Coffin* v. *Coffin*, 4 Mass. R. 1 ; *Bodwell* v. *Osgood*, 3 Pick. 379 ; *Worster* v. *the Canal Bridge*, 16 Pick. 541 ; *Blunt* v. *Little*, 3 Mason, 102, which was an action for a malicious prosecution, the verdict, being for $2000 damages, was directed to be set aside, unless the plaintiff should remit $500 of his damages ; *Wiggin* v. *Coffin*, 3 Story's R. 1, which was also an action for a malicious prosecution. In the case of *Jacobs* v. *Bangor*, 16 Maine R. 187, it is said, that where there is no certain measure of damages, the verdict of a jury is not to be set aside for excessive damages, unless there is reason to believe, that they " were actuated by passion, or by some undue influence, perverting their judgment." It is unnecessary to refer to that class of cases, where verdicts, in relation to property, and injuries to it, have been set aside, and new trials granted.

Honest and well meaning men are liable to be led astray, by strong feelings of sympathy, arising from a narration of painful and protracted sufferings, and while thus excited, often

inflict upon the author of them, a severer punishment, than he merits.

It is not alleged against the defendant, that he was ignorant of the duties of his profession, or that he wilfully and intentionally departed from them. It is true, that his conduct was not guided, with sufficient deliberation, and he relied with a confidence too strong, upon his own judgment.

The plaintiff had been lame for several years; his thigh bone was diseased. It is not denied that in 1843 an amputation was necessary, to arrest the progress of the disease. In that year, the defendant performed two operations, upon the plaintiff's thigh, by amputation. The first was unobjectionable as to the place of amputation, but the bone was left protruded too far, from the muscular parts.

The ground of complaint is principally for the second, that there was an error in not cutting off the limb nearer to the body, and want of care and skill in the mode of execution. But it is not shown, that the plaintiff sustained any material injury from the mere mode of execution, although it did not accord with the most correct and careful practice.

But as soon as the second amputation took place, it was apparent, that the bone was infected above the place of amputation. The plaintiff could not then bear another operation. The caries continued to increase in virulence, until the whole of the thigh bone was removed from its socket, by another surgeon.

The alleged fault of the defendant consisted in an error of judgment, in not removing more of the diseased limb. It is by no means certain, that the removal of a larger portion would have been effectual. When the first operation took place, the remaining bone appeared to be perfectly sound, but in a short time the disease manifested itself in such a fearful manner, as to require a second amputation. It seems therefore highly probable, that the whole bone was diseased, and that nothing short of its entire removal would have saved the life of the plaintiff. If such were the fact, it was of little importance, at what precise part of the limb, below the hip joint,

the operation was performed.    Yet damages, against him, have been rendered, not because he failed to remove the whole limb, but that he should have removed a few inches more of it.

It was the inevitable fate of the plaintiff to be a cripple for life, without any agency of the defendant.    The want of judgment of the latter may have protracted his sufferings, and caused an increase of expense and loss of time.

The defendant is not liable for a want of the highest degree of skill, but for ordinary skill.    *Sear* v. *Prentice*, 8 East, 347 ; Chitty on Con. 165.    And of course only for the want of ordinary care and ordinary judgment.

The practice of surgery is indispensable to the community, and while damages should be paid for negligence and carelessness, surgeons should not be deterred from the pursuit of their profession, by intemperate and extravagant verdicts.    The compensation to surgeons in the country is small, in comparison with what is paid in cities for similar services, and an error of judgment is visited with a severe penalty, which takes from one a large share of the surplus earnings of a long life.

We are constrained to believe, that the jury must have been actuated "by some undue influence," and that justice requires a reduction of the verdict.    But we have so much reluctance, to interfere with it, that we will allow it to remain, if the plaintiff will remit $500 of it.    If this is not done, the verdict will be set aside, and a new trial granted.